# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MARK E. FRONTERA,**

      **Plaintiff,**

                                        **Case No. C2-06-1046**

   **vs.**                                **Judge Edmund A. Sargus, Jr.**

                                        **Magistrate Judge Norah McCann King**

**CITY OF COLUMBUS,**
        **et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motions to dismiss[1] and for judgment on the pleadings. Defendants assert that Plaintiff's amended complaint should be dismissed as against each of them in their individual capacities because it was filed outside of the statute of limitations. In their motion for judgment on the pleadings, Defendants contend that they are entitled to judgment on the merits for all of Plaintiff's claims. For the following reasons, Defendants' motion to dismiss is granted as to claims against the individual Defendants in their personal capacities and the motion for judgment on the pleadings is granted in part and denied in part.

---

[1]      On July 19, 2007, Magistrate Judge King granted Plaintiff's motion for leave to amend the complaint *instanter*. Defendants originally objected to the Magistrate Judge's Report and Recommendation by filing a motion for reconsideration. On August 9, 2007, following a telephone conference and with agreement of the parties, the Court converted Defendants' motion for reconsideration to one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.

The following facts are relevant to the instant motions.[2] Plaintiff, Mark E. Frontera, is a

current employee of the City of Columbus, Division of Police. In his original complaint, filed

December 12, 2006, Plaintiff named Defendants, the City of Columbus, and City of Columbus

employees Robert Meader, Kimberly Jacobs, Joseph Bachman, Mark Rapp, William Mattei, Kerry

Hile, David Ross, Stephen P. Gammill, Roderick Wittich and Ronald Gray. Plaintiff named each

of the City employees in his or her individual capacity only. Plaintiff brings this action under 42

U.S.C. §§ 1983 and 1985, alleging violations of his First and Fourteenth Amendment rights under

the United States Constitution, with a supplemental state-law claim for defamation.

Plaintiff alleges that he was a volunteer, as a private citizen on his personal time, with

Exploring, a career-education program operated and maintained by Learning for Life, a subsidiary

of the Boy Scouts of America. Learning for Life has a program for young men and women who

are interested in careers in the field of law enforcement. Law Enforcement Exploring offers

experiences that promote the growth and development of adolescent youth. Learning for Life Law

Enforcement Exploring programs are administered locally and are identified using Post numbers,

which in this case involves Posts #221 and #222.

On or about December 13, 2004, Officer Kimberly Wilkinson contacted Lieutenant Robert

---

[2]     Most of the underlying allegations that form the bases of Plaintiff's causes of action
against the Defendants are not pertinent to the Defendants' motions. Briefly, however, as set forth in his
amended complaint, Plaintiff is a homosexual male. He alleges that Defendants violated his
constitutional rights under the First Amendment to free speech and association by forbidding him to
volunteer for the Explorers as an advisor, that Defendants caused him to turn over private property and
temporarily removed him from his assignment as a police officer. Plaintiff also alleges that Defendants
violated both the procedural and substantive components of the Fourteenth Amendment due process and
equal protection clauses by discriminating against him on the basis of his sexual orientation, and by
forcing him to turn over private property and temporarily depriving him of his post as a police officer.

Meader regarding allegations of misconduct by Plaintiff in his role as Advisor for the Explorer

Posts. Meader, in turn, contacted the Internal Affairs Bureau ("IAB") regarding the allegations

of Plaintiff's misconduct. Members of IAB, including Sergeant Mark Rapp and Sergeant Joseph

Backman, conducted several interviews regarding the allegations against Plaintiff. Plaintiff alleges

that, during these interviews, Defendants Backman and Rapp asked irrelevant and inappropriate

questions about Plaintiff's private life, including his sexual orientation.

On December 14, 2004, Defendant Meader removed Plaintiff as an Advisor for the

Columbus Division of Police Law Enforcement Explorer Posts. Meader, Plaintiff's direct

superior in the chain of command in the Columbus Division of Police, issued an order to Plaintiff

commanding him not to have any contact with the Explorers:

> You are hereby ordered as of December 14, 2004 to (1) not have . . . any contact
> . . . with past members of the Columbus Division of Police, Explorers; (2) not
> cause any other persons to have contact with present or past members of the
> Columbus Division of Police, Explorers; (3) not to have contact with, or cause to
> have contact with any of the assistant advisors . . . . (4) not attend any police
> Explorer functions, official or otherwise, until otherwise notified by Robert Meader
> . . . . .

(Amend. Amend. Compl., ., ., ¶ 48.)

On January 17, 2005, Meader sent an electronic message to Plaintiff ordering him to bring

all records and documents relating to his role with the Explorers. On January 25, 2005, Meader

sent another electronic message giving Plaintiff a direct order to acknowledge the communication,

and to coordinate with the duty supervisor to bring in all items related to the Explorers by January

28, 2005. Plaintiff acknowledged Meader's message, and forwarded the documents under protest

because, according to Plaintiff, the paperwork had been created and maintained on his private time

and was his personal property.

-3-

On February 18, 2005, Plaintiff received written notice of the allegations against him as collected during the IAB investigation. On March 8, 2005, Plaintiff received a letter from the Boy Scouts of America stating that they had "received information that has compelled us to revoke and/or deny any registration you may have in the Boy Scouts. We must therefore request that you sever any relationships you may have with the Boy Scouts of America, the Exploring and Learning for Life programs." (Amend. Compl., ¶ 64.) According to the amended complaint, many of the allegations in the IAB report were dismissed as unfounded, while others were found to be proven.

On May 17, 2005, the IAB opened a separate investigation into whether Plaintiff had been insubordinate to his supervisors during the initial investigation. On May 18, 2005, Defendant Commander William Mattei relieved Plaintiff of his regular assignment pending further investigation into the insubordination charges. The IAB subsequently determined that the allegations of insubordination in this second report were unfounded, and the complaint was cleared. On June 29, 2005, Mattei reinstated Plaintiff to his regular assignment.

On June 15, 2005, Plaintiff filed a complaint with the Equal Employment Opportunity division of the City of Columbus Department of Human Resources. Plaintiff alleged discrimination based on sexual orientation, police misconduct, and violations of his constitutional rights with respect to both previous investigations and reports. The IAB investigated all of the allegations. Plaintiff's charges were determined to be unfounded throughout each step of the internal appeals process. On March 1, 2006, Plaintiff's EEO complaint was found to be without merit.

Defendants have filed a motion for judgment on the pleadings, contending, in part, that the individual Defendants, whom Plaintiff had named in their official capacity only, were entitled to

-4-

judgment to the same extent as the City of Columbus.  Defendants assert further that the City of

Columbus, as a municipality, is entitled to judgment as to Plaintiff's claim under Section 1983,

because, according to Defendants, the City has no custom or policy that caused Plaintiff's alleged

injuries.  Defendants likewise assert that claims against the individual Defendants in their official

capacities must be dismissed, because the action against them represents merely another way of

pleading against the City of Columbus.  Defendants maintain that they are entitled to judgment on

Plaintiff's claim for conspiracy under 42 U.S.C. § 1985.  Defendants contend that the city cannot

conspire with its own employees.  Defendants also contend that Plaintiff's defamation claim is

barred by the applicable statute of limitations.

Plaintiff responded by filing a memorandum in opposition, and concomitantly moved to

amend the complaint to name the individual Defendants in their individual capacities.  Defendants

opposed the motion, contending that Plaintiff's attempt to amend the complaint to name the

Defendants in their individual capacity would be futile, since such claims were not brought prior

to the expiration of the statute of limitations.  These matters are now before the Court on the

merits.

## II.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant, by motion, to raise the defense

of a plaintiff's "failure to state a claim upon which relief can be granted."  When considering a

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must

construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material

allegations in the amended complaint as true.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974);

*Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  A complaint will be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) only if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Schuer v. Rhodes*, 416 U.S. 232, 236 (1974). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Dunn v. State of Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982).

Although the complaint must be liberally construed in favor of the party opposing the motion to dismiss, the Court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also*

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).[3] A plaintiff's "obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *League of Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(citing *Bell Atlantic*, 127 S. Ct. at 1964-65). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Id.* To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Bell Atlantic*, 127 S. Ct. at 1969.

As for Defendants' motion for judgment on the pleadings, Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." The Rule 12(c) standard is the same as the standard under Rule 12(b)(6). *See Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). For purposes of the Rule 12(c) Motion, all well-pleaded material allegations of the pleadings must be taken as true and the motion is granted only when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

---

[3]     In the recent *Bell Atlantic* case, the United States Supreme Court abrogated the standard for disposition of a Rule 12(b)(6) motion previously employed by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The *Conley* standard provided that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic*, 127 S. Ct. at 1964 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

## III.

### A.    Individual Capacity Claims - Motion to Dismiss

Defendants maintain that Plaintiff's claims against them in their individual capacities must be dismissed because Plaintiff has not asserted them within the applicable statute of limitations. In particular, Plaintiff alleges that Defendants violated and conspired to violate his rights guaranteed by the First and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and § 1985. Since no statute of limitations is contained in §§ 1983 or 1985, state law provides the relevant time limitation.  In Ohio, a two-year statute of limitations applies to § 1983 claims. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)(citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc)).  Similarly, the statute of limitations for claims under 42 U.S.C. § 1985 is two years.  *Savage v. Unknown FBI Agents*, 142 F.3d 436, 1998 WL 39318 *1 (6th Cir. Feb. 10, 1998)(unpublished) (citing *Harris v. Board of Educ.*, 798 F. Supp. 1331, 1345 (S.D. Ohio 1992)). Plaintiff filed his original complaint on December 12, 2006 and his amended complaint on July 19, 2007 following the Court's Order granting him leave.

Federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato*, 127 S.Ct. 1091, 1095 (2007).  Under these federal principles, it is "the standard rule that [accrual occurs] when the plaintiff has a 'complete and present cause of action.'" *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). This occurs "when 'the plaintiff can file suit and obtain relief.'"  *Id.* (quoting *Bay Area Laundry*, 522 U.S. at 201); *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).  "Under federal law, as developed in [the Sixth] Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of

-8-

his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996). "In determining when the cause of action accrues in § 1983 cases, [the court] look[s] to the event that should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).

In their motions, Defendants contend that the latest event possibly triggering the statute of limitations occurred at the end of February, 2005.[4] Plaintiff moved for leave to file his amended complaint on April 6, 2007, several months after the two-year statute of limitations expired. Plaintiff maintains, however, that factual bases of his amended complaint do not refer to a discrete act or single occurrence. Plaintiff contends that Meader's December 14, 2004 order, directed to Plaintiff via telephone, represents a "standing" order that is "automatically issued anew every day until the order is rescinded." (Pl's Mem. Contra at p. 2.) Plaintiff notes that Defendants placed no time limitations on their orders and that they have never sent Plaintiff any communication terminating them.

Thus, Plaintiff contends that the alleged constitutional violations imposed by Defendants in their individual capacities are not time-barred because they constitute "continuing violations." The continuing violation doctrine has the effect of preserving claims based on incidents that occurred outside of the limitations period if those incidents were part of a larger discriminatory "practice" that continued into the limitations period. *Havens Realty Corp. v. Coleman*, 455 U.S.

---

[4] Plaintiff's amended complaint states that he was ordered to turn over records on January 17, 2005, January 25, 2005 and February 17, 2005. (Amend. Compl., ¶¶ 54, 55 & 60.) Plaintiff also asserts at paragraph 133 of the amended complaint that Defendants Bachman and Rapp asked irrelevant questions regarding his private home life and about his sexual orientation during the investigatory interviews. According to the complaint, the interviews took place during December 2004 and January and February of 2005. (Amend. Compl., ¶¶ 39, 40, 52.)

363, 379 (1982). The continuing violation theory is a narrow exception to the ordinary rule that statute of limitations begin to run at the time the alleged discriminatory acts occurred. *Trzebuckowski,* 319 F.3d at 857. Courts have been reluctant to apply the continuing violation theory outside the context of Title VII, and rarely extend it to § 1983 claims. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003).

In *Ledbetter v. Goodyear Tire & Rubber Co.,* --- U.S. ----, 127 S.Ct. 2162 (2007), the United States Supreme Court emphasized the circumscribed nature of a continuing violation. The Court noted in the context of an EEOC complaint that the limitations period "is triggered when a discrete unlawful practice takes place." *Id.* at 2169. The Court noted that "a freestanding violation may always be charged within its own charging period," and added that "if an employer engages in a series of acts each of which is intentionally discriminatory . . . a fresh violation takes place [with] each act." *Id.* at 2174. The Court nevertheless found that "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Id.* at 2169.

The Sixth Circuit in *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999), applied a three-part test for determining whether a continuing violation exists for statute of limitations purposes. First, a "defendant's wrongful conduct must continue after the precipitating event that began the pattern." *Tolbert*, 172 F.3d at 940. Second, "injury to the plaintiff must continue to accrue after that event." *Id*. ("[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."). Third, "further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct." *Id*.

-10-

Based on these standards, the Court perceives no continuing violation as it relates to Meader's order forbidding Plaintiff from associating with the Columbus Explorers. If Meader's order violated Plaintiff's constitutional rights, it was a discrete, identifiable incident, the effects of which may have continued to harm him, but did not constitute a new discriminatory event for purposes of the two-year statute of limitations. *See Ledbetter*, 127 S.Ct. 2162 (rejecting continuing violation argument where the original action was a sex-based discrimination, but subsequent non-discriminatory enforcement of the decision, *i.e.*, issuing each subsequent paycheck, was not a violation for statute of limitations purposes). Thus, Plaintiff's claims for alleged constitutional violations purportedly imposed by Defendants in their individual capacities are time-barred insofar as such claims relate to Meader's direct order removing him from, and further prohibiting future association with the Columbus Explorers.[5]

Alternatively, Plaintiff asserts that his amended complaint against the individual Defendants should survive despite the running of the statute of limitations by operation of Federal Rule of Civil Procedure 15(c). He maintains that the amended pleading "relates back" to the original complaint. Rule 15(c)(1)(C) provides that an amendment relates back to the original pleading when

---

[5]     Plaintiff points out, however, that he has pleaded in his amended complaint that Defendants violated his civil rights on or about May 18, 2005, when Mattei allegedly wrongfully relieved him of his regular assignment pending further investigation into the subordination issues and, despite Plaintiff's written protestations to the Chief of Police, did not reinstate Plaintiff to his regular assignment until June 29, 2005. These actions occurred within the two-year statutory period. Defendants do not address these allegations or their timeliness. Nonetheless, for the reasons stated below, Plaintiff will be permitted to proceed on these matters directly against the City of Columbus and Defendants in their official capacities. Whether or not these allegations constitute violations of § 1983, the extent to which any of the named-Defendants participated in these events, and whether their actions were taken pursuant to an official municipal policy of some nature are matters for discovery and proof.

the amendment changes the party or the naming of the party against whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

    (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii).

Relation back is dependent upon four factors:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). While the parties do not dispute that the claims in the amended complaint arise out of conduct set forth in the original pleading, as required by the first factor, they disagree as to whether the remaining three are satisfied.

In this Circuit, a plaintiff must clearly set forth in his or her pleadings that government defendants are being sued in their individual capacities for damages. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). *Wells* requires a plaintiff to clearly notify any defendant of his or her intent to seek individual liability. While it is "clearly preferable" that a plaintiff expressly state in the complaint whether a defendant in a § 1983 action is sued in his or her individual capacity, "failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice of an individual capacity claim." *Moore v. City of Harriman*, 272 F.3d

-12-

769, 772 (6th Cir. 2001). Thus, the Court must determine whether the individual Defendants were given and received proper notice of Plaintiff's intention to seek personal liability by examining the course of proceedings in this matter.

In this case, Plaintiff originally pleaded capacity affirmatively and chose to name Defendants as official government agents only. The caption of Plaintiff's original complaint listed each Defendant and explicitly stated that each was sued in his or her official capacity, only. The complaint indicates that each Defendant was acting in his or her capacity as a police officer. The face of Plaintiff's original complaint conveys his intentional choice to hold the City responsible for the acts of its agents.[6] Relying on Plaintiff's choice to sue them in their official capacity only, Defendants did not raise the affirmative defense of qualified immunity.

"[T]he distinction between an official capacity and an individual capacity suit is significant." *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993)(finding that the district court erred in granting a motion to amend after the running of the statute of limitations where original pleading clearly named the defendant in his official capacity only). This case is controlling precedent upon the Court. A lawsuit in an individual capacity exposes defendants to the possibility of having to pay damages from his or her personal assets. Here, until Plaintiff filed his motion for leave to amend his complaint, Defendants had no reason to believe that they would be held personally liable or that their personal assets were at stake.

---

[6]     Plaintiff admits in his memorandum in opposition to Defendants' motion for judgment on the pleadings that "Defendants make good arguments related to federal claims against the individuals in their official capacity only. Plaintiff is seeking leave to file an amended complaint to take action against the individual Defendants in their personal capacity and their official capacity." (Pl's Mem. Opp., at p. 2.)

-13-

With such a clear statement in the pleadings, Defendants had no notice or reason to know that they were being sued in their personal capacities or that, but for a mistake concerning identity, the suit would have been against them personally. Thus, the amended complaint fails to meet the criteria for relation back set forth in Fed.R.Civ.P. 15(c)(3).

For these reasons, Defendants' motion to dismiss the individual Defendants in their individual capacities is **GRANTED**.

**B.    Official Capacity Claims - Motion for Judgment on the Pleadings**

Local government officials sued in their official capacities are "persons" for purposes of § 1983 in those cases in which a local government would be subject to suit in its own name. *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 591 n.55 (1978). A § 1983 action against a municipal official in his or her official capacity is treated as an action against the municipality entity itself. *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003). The Supreme Court has noted, in *dictum*, that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). As such, in the instant matter, Defendants argue that it is redundant to allege claims against both a municipality and against its officers in their official capacities, as the latter necessarily implicates the former. They, therefore, seek dismissal of the amended complaint altogether as it relates to them in their official capacity. *See Luke v. Abbott*, 954 F. Supp. 202, 203-04 (C.D. Cal. 1997), *Williams v. City of Saginaw*, 2002 WL 1798907, *13 (E.D. Mich., Aug. 2, 2002)(unpublished)(collecting cases in which district courts have dismissed

-14-

official capacity suits against municipal employees as redundant when both an officer and the local government entity are named).

The Court acknowledges that Plaintiff's claims against the individual Defendants in their official capacities are duplicative of those made against the City of Columbus. *Monell* and its progeny, however, clearly recognize and condone official capacity claims against local government employees, and the courts routinely countenance such lawsuits. Defendants have provided no binding authority from the Supreme Court or the Court of Appeals for the Sixth Circuit from which this Court could conclude that dismissal of the official capacity claims against the Defendants is proper. Defendants' motion for judgment on the pleadings is therefore **DENIED** in this regard.

**C.     Section 1983 Claim Against the City of Columbus**

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

Defendant, the City of Columbus, as a municipality, may be held liable under § 1983 only when the municipality itself causes the alleged constitutional violation. *Monell*, 436 U.S. at 694.

-15-

The doctrine of *respondeat superior* does not apply; a governmental entity cannot be held liable under § 1983 based solely upon allegations that an employee or agent inflicted an injury. *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Sixth Circuit has held that "to satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself and show that particular injury incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

Therefore, the City of Columbus cannot be held liable unless Plaintiff can prove that he suffered a constitutional deprivation as required under §1983 and that such deprivation was caused by a policy, practice or custom of the City. The local government's policy or custom "must be the moving force of the constitutional violation in order to establish the liability of a governmental body under § 1983." *Polk County v. Dodson*, 454 U.S. 312 (1981) (quoting *Monell*, 436 U.S. at 694). The course of conduct, "whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability." *Bennett*, 728 F.2d at 767.

The City of Columbus seeks judgment in this matter on the basis that Plaintiff has failed to articulate a particular City policy or official custom that resulted in the alleged violation of his constitutional rights. The Court notes, however, that Plaintiff repeatedly alleges that the City of Columbus had policies and/or customs that led the Defendants to violate his constitutional rights. (*E.g.*, Amend. Compl., ¶¶83. 95, 107.) Plaintiff also alleges that the City of Columbus "failed to train" its employees so that they did not violate his civil rights. (*E.g.* Amend. Compl., ¶¶ 84,

-16-

96, 108.)

The City of Columbus' motion for judgment on the pleadings on Plaintiff's § 1983 claim is **DENIED.** At the pleading stage, Plaintiff has not yet had the opportunity to engage in discovery as it relates to the City's official policies and customs, and he is not compelled to adduce such evidence in response to Defendants' motion for judgment on the pleadings. Whether or not the City had such policies and whether Plaintiff suffered a constitutional deprivation as a result of one or more of them requires additional proof, which Defendants may later test at the summary judgment stage of the litigation. At this point, however, Plaintiff has satisfied his pleading burden as it relates to a § 1983 claim against the City of Columbus.

**D.     Section 1985 Claims**

Section 1985 pertains to conspiracies to interfere with civil rights.[7] To succeed in establishing a cause of action under 42 U.S.C. § 1985, Plaintiff must prove "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any

---

[7]     Section 1985(3) provides:

[i]f two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3)

-17-

right or privilege of a citizen of the United States." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). A § 1985(3) complaint must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir.1992); *Center for Bio-Ethical Reform, Inc. v. City of Springboro* 477 F.3d 807, 832 (6th Cir. 2007).

Here, Defendants seek judgment on the pleadings as to Plaintiff's conspiracy claim under § 1985. Defendants base their motion on the intra-corporate conspiracy doctrine, which holds that employees of a single collective entity cannot conspire with each other. *See generally Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505, 509 (6th Cir. 1991). Defendants contend that the intra-corporate conspiracy doctrine applies to and defeats Plaintiff's claims brought under 42 U.S.C. § 1985(3).

In this case, the intra-corporate conspiracy doctrine would bar a claim under § 1985 if Plaintiff alleges that Defendants, as employees of the City of Columbus, conspired with each other and their governmental employer. Here, however, Plaintiff has amended his complaint and supplemented his § 1985 claims by stating that Defendants, who are indisputably police officers employed by the City of Columbus, conspired "with others including volunteer leaders of the Explorer Posts," to infringe on his constitutional rights. (*E.g.*, Amend. Compl., ¶¶ 89, 101, 115, 130.)

Nonetheless, Defendants argue they are entitled to judgment because the reference in Plaintiff's amended complaint to the conspiracy, namely that the named Defendants conspired "with others including volunteer leaders of the Explorer Posts," is vague, and that Plaintiff has failed to plead any facts supporting these conclusory assertions. "It is well-settled that conspiracy

-18-

claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim ....." *Guitterz v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) (holding that a conspiracy claim was properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").

Even under the most liberal construction of his amended complaint, Plaintiff fails to provide anything more than conclusory allegations of conspiracy. Plaintiff has done no more than state that a purported conspiracy existed between the named Defendants and unknown third-persons affiliated with the Explorers. Plaintiff has neither identified who was involved in the conspiracy nor described what the objective of that conspiracy was. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly* 127 S.Ct. 1955, 1959 (2007).

Accordingly, Defendants' motion is **GRANTED** with respect to Plaintiff's conspiracy claims under § 1985.

**E.    Defamation**

Finally, Plaintiff alleges that Defendants defamed him by disclosing private information about his private life to others during interviews, through letters and in telephone conversations, which purportedly damaged his reputation and prevented his ability to continue volunteering as an advisor with the Explorer Posts. Defendants contend that the defamation claim is limited to

-19-

correspondence and communications made between Defendants and the Boy Scouts of America prior to March 8, 2005 and, because the original complaint was not filed until December 12, 2006, is barred by the one-year statute of limitations, as set forth in Ohio Rev. Code § 2305.11.[8]

While Plaintiff's defamation claim is not as factually limited as Defendants describe, the Court finds that Plaintiff's amended complaint makes no reference to any communications or false statements that occurred after December 11, 2005. Indeed, Plaintiff's defamation claim merely states that Defendants "disclosed private information about Plaintiff to others through interview questions, letters and telephone calls." By the terms of his amended complaint, no interview, letter or telephone call occurred within the applicable limitations period. In fact, the amended complaint makes not mention of *any* facts or alleged toritous conduct after December 8, 2005.[9] Defendants' motion is therefore **GRANTED** on Plaintiff's defamation claim.[10]

### IV.

For the foregoing reasons, Defendants' motion for judgment on the pleadings (Doc. #12) is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion to dismiss the personal capacity claims against the individual Defendants (Doc. #26) is **GRANTED**.

---

[8]      Ohio Rev. Code § 2305.11(A) provides that "[a]n action for libel, [or] slander . . . shall be commenced within one year after the cause of action accrued. . . ."

[9]      The only fact alleged after December 8, 2005 is that on March 1, 2006, Plaintiff's own internal complaint was cleared with the IAB as unfounded.

[10]      Because Plaintiff's defamation count is disposed of on statute of limitations grounds, the Court need not address the governmental Defendants' assertions of immunity under state law regarding this state-law claim.

-20-

**IT IS SO ORDERED.**

_____1-22-2008_____          _____/s/_____ _____
DATED                                EDMUND A. SARGUS, JR.
                                     UNITED STATES DISTRICT JUDGE